IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTINE REITANO<br>    Complainant | DOCKET NO.  2:15-cv-567   DIV.____ |
| | USDC, EASTERN DISTRICT OF LA. |
| VERSUS | |
| | A CIVIL ACTION |
| FREEH GROUP INTERNATIONAL<br>SOLUTIONS, LLC AND LOUIS J. FREEH<br>    Defendants | JUDGE: |
| | MAGISTRATE: |

**ORIGINAL COMPLAINT FOR DAMAGES**

NOW INTO COURT, through undersigned counsel, comes Christine Reitano, a resident of full age and majority of the Parish of Orleans, State of Louisiana who, with respect, files this civil action for damages in accordance with the Federal Rules of Civil Procedure, including specifically, but not limited to, Rules 2, 3 and 4 of said rules:

1.

Made the defendants herein are:

A.  The Freeh Group International Solutions, LLC ("The Freeh Group"), is a foreign LLC, whose principal office is located at 3711 Kennett Park, Suite 130, Wilmington, DE 19807 and which has established an office and is doing business in the Eastern District of Louisiana, City of New Orleans at 935 Gravier Street, Suite 1160, New Orleans, LA 70112. The Freeh Group, according to its Chairman in a statement issued on March 1, 2014 to Fraud Magazine, was "sold to Pepper Hamilton LLP in 2012, making it a wholly owned subsidiary of Pepper Hamilton LLP, whose principal office is located at 600 Fourteenth Street N.W., Washington, DC 20005-2004. Complainant reserves her right to supplement this complaint at a later date and add Pepper Hamilton

LLP as a solidarily liable defendant if discovery reveals a level of involvement above simply being the owner of the Freeh Group.

     B.  Louis J. Freeh, ("Freeh") believed to be a resident of the State of Delaware, residence address unknown, and whose principal offices are located with the Freeh Group at 3711 Kennett Part, Suite 130, Wilmington, Delaware 19807 or with Pepper Hamilton LLP at 600 Fourteenth Street N.W., Washington, DC 20005-2004.  The defendant, Mr. Freeh has established an office and is doing business in the Eastern District of Louisiana, City of New Orleans at 935 Gravier Street, Suite 1160, New Orleans, LA 70112. Mr. Freeh is the Chairman of the Freeh Group International Solutions, LLC.

2.

## JURISDICTION

     This Court has jurisdiction in this matter based on 28 U.S.C. 1332 because it involves a controversy, the value of which exceeds $75,000.00 and because it is "an action between citizens of different states," as provided in 28 U.S.C. 1332, section (a)(1).

3.

## VENUE

     Venue is proper in the Eastern District of Louisiana, New Orleans Division, pursuant to 28 U.S.C. 1391 (a)(2) because the Eastern District is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ..."

4.

     The misconduct of the defendants, which is the basis for Ms. Reitano's claims, began in September, 2013 and continues up to and includes the date that this complaint is filed because the

non-repentant defendants, even after receiving conclusive and substantial evidence that their original and subsequently repeated and reinforced accusations were completely false, have steadfastly refused to recant the accusations in order that Ms. Reitano's personal and professional life can possibly be restored.  The defendants began their damage to Ms. Reitano in September, 2013, by publishing on the internet false, malicious and reckless accusations of felony crimes and professional misconduct, including claims of fraud, money laundering, conspiracy, perjury, dishonesty, deceit, misrepresentation, lack of candor to a tribunal, and unclean hands all in violation of federal criminal statutes and the Rules of Professional Conduct for attorneys.

Six weeks later, in October of 2013, Ms. Reitano objected to the publication and provided the defendants with sworn and credible evidence which contradicted their original accusations.  The defendants have steadfastly, to this day, refused to correct or modify their original false accusations, even after receiving the sworn testimony.

Even worse, on February 21, 2014, with the sworn and contradictory testimony in hand, the defendants doubled down on their original false accusations by publishing a document which affirmed, restated and repeated their earlier false accusations.  At that time, the defendants falsely claimed that they were not in possession of anything or "any objection" which "changes in any way the validity" of the defamatory September publication.

In October, 2014, the defendants, by their own admission, clearly demonstrated that all of their previous accusations were both reckless and in total disregard for the truth because they were forced to admit that there was "*no evidence*," credible or not, to support their first claims of criminal and unprofessional conduct by Ms. Reitano and/or the second claim that they did not have in their possession anything to "change in any way the validity" of the first malicious and false claim.

## THE CAUSE OF ACTION AND THE CHRONOLOGY

5.

**September, 2013**: The defendants published a report on the internet which contains (a) false, malicious and reckless accusations of felony criminal conduct, specifically (according to defendants) federal crimes of "fraud, money laundering, conspiracy or perjury," against Ms. Reitano (defamation per se) and all without regard for the truth or falsity of the allegations; and (b) false, malicious and reckless accusations of professional and ethical violations, without regard for the truth or falsity of the allegations. Here is only part of what the defendants said about Ms. Reitano in the publication:

(A) Ms. Reitano's conduct "...may have violated federal criminal statutes regarding fraud, money laundering, conspiracy or perjury;"

(B) "Ms. Reitano denied under oath that she had any involvement in arranging a referral fee for the Thonn claim. However, an attorney at Andry Lerner and Andry Lerner firm records contradicted her denial.[1] Ms. Reitano continues to insist that she had no knowledge or role in arranging a referral fee for the Thonn claim despite this credible evidence to the contrary."

(C) Ms. Reitano's conduct should be reported to the U.S. Attorney for investigation of fraud, money laundering, conspiracy and perjury;

(D) Ms. Reitano's conduct should be reported to the Louisiana Bar Association for determination if she violated any of the Rules of Professional Conduct, including Rule 8.4 which, according to the defendants, states that the following is unprofessional conduct for a lawyer:

---

[1] This is an allegation about Ms. Mancuso and, under oath, Ms. Mancuso later contradicted this false allegation which was based exclusively on an unrecorded, brief interview, and recalled by an employee of the defendants from his "notes." However, even the "notes" do not support the conclusory statement regarding the alleged denial by Ms. Reitano.

• Commit a criminal act especially one that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects:

• Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

• Engage in conduct that is prejudicial to the administration of justice; and,

• State or imply an ability to influence improperly a judge, judicial officer, governmental agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; and

(E) violating Rule 3.3 of the Rules of Professional Conduct for lack of candor to a tribunal.

6.

**October, 2013**: Ms. Reitano objected to the false allegations and provided the defendants with the sworn testimony of Ms. Christina Mancuso which completely contradicted and disproved the so-called factual basis of the defendants' accusations of fraud, money laundering, conspiracy or perjury against Ms. Reitano. This sworn testimony proved that the earlier published accusations of criminal conduct were completely reckless, malicious and without regard for the truth of the statements.

7.

**October, 2013 to February, 2014**: The defendants remained relentless in their reckless efforts to continue to malign Ms. Reitano by simply ignoring, as non-existent, the sworn testimony which disproved and contradicted the unsworn, unrecorded basis of their first report which was exclusively based on the alleged "notes" of a brief, unrecorded interview by an employee of the defendants. During this time, the defendants intentionally failed to make any effort to review or reinvestigate their previous false, malicious and reckless statements about Ms. Reitano's alleged

criminal conduct to determine whether they were or should be required to retract or, at a minimum, publicly correct the previous false statements of criminal conduct and unprofessional behavior.

8.

**February, 2014:** Four months after receiving the sworn contradiction of the malicious and reckless accusations, and obviously without any further re-examination of the falsity of the first report, the steadfast and unwavering defendants, obviously not to be bothered or concerned with the truth, published another report which restated and reinforced their earlier false report by claiming that not one of Ms. Reitano's objections to the first report (the sworn testimony of Ms. Mancuso) "...changes in any way the validity of the report's findings." Thus, the defendants, very publicly, repeated, reinforced and doubled down on their earlier false, malicious and reckless statements, in the face of sworn testimony that contradicted their false accusations.

9.

In the first published report, which was reinforced by the second, defendants also accused Ms. Reitano of a breach of Rule 3.3 of the Attorneys' Rules of Professional Conduct which creates a duty of candor to a tribunal for all attorneys. According to the defendants, the duty of candor to the tribunal is explained in their first published report as follows:

> Rule 3.3 of both the Louisiana Rules of Professional Conduct and the Nevada Rules of Professional Conduct set forth a lawyer's duty of candor towards the tribunal. Specifically, a lawyer shall not knowingly make a false statement of fact or law to a tribunal or *fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.* Nor shall the lawyer offer evidence that the lawyer knows to be false. <u>If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures including, if necessary, disclosure to the tribunal.</u> . . As the Louisiana Supreme Court has recognized, "[c]andor and honesty are a lawyer's stock and trade. Truth is not a matter of

> convenience.  *Sometimes lawyers may find it inconvenient, embarrassing, or even painful to tell the truth."* A "material fact" is one whose "existence or nonexistence" is "essential" to the resolution of a matter. (Emphasis added) (Footnotes omitted).

Defendant Freeh is an attorney and the Freeh Group is owned by a firm of attorneys, Pepper Hamilton LLP.  Clearly, in February, 2014, when they published the second document repeating, restating and renewing the earlier allegations of criminal conduct, the defendants had a duty, at a minimum, to inform the public tribunal, as well as the court tribunal which also received a copy, that they had received contradictory sworn and admissible evidence about a material fact relied on by the defendants in stating their accusations related to Ms. Reitano.

10.

**September, 2014**: The defendants' lack of candor to the public and to the court tribunal did not end in February, 2014.  In open court, Mr. Greg Paw, an employee of the defendant, the Freeh Group, stated the following on September 23, 2014:

> "Well, to the Reitano-Mancuso conversation, I actually submit that *it really does not very much matter* to the issues before the court."
> (Emphasis added).

The conversation was clearly material and "mattered a lot" when the defendants recklessly accused Ms. Reitano of fraud, money laundering, conspiracy and perjury, which can only be charged in connection with a "material" false statement. The statement has to "matter."  In fact, the "conversation" was actually "all that mattered" because without it and the blatantly false spin put on it by defendants, the defendants' accusations of fraud, money laundering and perjury were meaningless and could not be substantiated. Instead of degrading the importance of the conversation, the employee of the Freeh Group had a duty of candor to the public and the tribunal in September to reveal that there was competent evidence to contradict the accusations against Ms. Reitano.

Instead, and since such an admission would be "*inconvenient, embarrassing, or even painful to tell [that] truth,*" Mr. Paw, agent of the defendants, affirmatively attempted to skirt around their duty of candor by claiming that the very conversation which allegedly gave the defendants the impetus and materiality to accuse Ms. Reitano with felonious criminal conduct, suddenly and surprisingly " [did] not very much matter" any more.

11.

**October, 2014**: When confronted with an upcoming hearing in court and a requirement to inform the court, in advance, of all disputed issues and admissible evidence which would be presented, the defendants were trapped and finally had to fess up to the truth about the lack of evidence to support their original and repeated allegations of criminal conduct against Ms. Reitano. In the face of the truth about to come out with admissible evidence and testimony, here is what the defendants were forced to admit:

> Reitano testified she had no continuing financial interest in the Thonn claims after she began work at the CAO, and <u>no evidence contradicts her statement</u>. (Emphasis added).
>
> *Factual Issues in Dispute*: None.

Compare this to the first published statement on this subject:

> "Ms. Reitano denied under oath that she had any involvement in arranging a referral fee for the Thonn claim. However, an attorney at Andry Lerner and Andry Lerner firm records contradict her denial. Ms. Reitano continues to insist that she had no knowledge or role in arranging a referral fee for the Thonn claim <u>despite this credible evidence to the contrary</u>." (Emphasis added).

In September, 2013 and February, 2014 the defendants claim to have "credible evidence" to support their accusations. Then, in October, 2014, the "credible evidence" magically evaporated and

becomes "no evidence" and neither of the defendants has yet to say that the accusations were false and that Ms. Reitano did not commit any crimes or violate any Rules of Professional Conduct. Mr. Freeh and his confederates at The Freeh Group had numerous opportunities, including February 21, 2014 to admit their mistake and, at least in a very small way, mitigate the devastating damage which has been done to Ms. Reitano. They refused all opportunities and, on the contrary, reinforced and publicly restated the accusations they then knew to be false. Their conduct, beginning in September, 2013 and continuing to this day has been malicious and in total disregard for the truth.

12.

The defendants' accusations and conduct, in addition to being defamatory, constitute malicious prosecution. As a result of their false conclusions and recommendations, on information and belief, their charges were forwarded to the U.S. Attorney for the Eastern District of Louisiana as well as the disciplinary arm of the Louisiana State Bar Association. The defendants admitted in October, 2014, that there is no evidence to support their charges of fraud, money laundering, conspiracy, perjury or any violation of the Rules of Professional Conduct for attorneys. In spite of this admission, the defendants have continuously and persistently refused to report their admissions to either agency, thus allowing the malicious prosecution of Ms. Reitano, for which they are responsible, to continue to this day.

**DAMAGES**

13.

Before the first false accusations by the defendants, Ms. Reitano was a very private, polite, courteous, respectful, personable, soft spoken and well-educated person. She was active in her community and well respected by all who knew her. She has three teenage sons and a host of friends

and relatives. Prior to the scandalous accusations made by the defendants, Ms. Reitano was certainly not a public figure. Unfortunately, the inflammatory accusations of her alleged crimes and unethical conduct received national and international coverage in the media. The defendants published their accusations on the internet to be sure that the broadcast of the accusations was of the widest proportions. As a result of the accusations and the internet broadcast by the defendants, Ms. Reitano has been publicly and internationally labeled a money launderer, a conspirator, a perjurer (liar), a deceitful and dishonest person, and a person who commits fraud. Not one of these accusations bears any resemblance to the truth and the defendants always knew or should have known this. The defendants received concrete, admissible and credible evidence which contradicts their accusations of criminal conduct and still refuse to correct their accusations. Instead, the defendants remain resolute in their determination to continue their destruction of Ms. Reitano. They have steadfastly refused to this day to publicly recant, retract, modify, alter or amend their false accusations in any way. Furthermore, by continuously not admitting that the allegations were insupportable, the defendants removed each and every possibility that Ms. Reitano could get her previous job back. The defendants' forced admission to a court that they have "no evidence" to support their allegations of criminal conduct by Ms. Reitano does not undo what they have done and are continuing to do. That admission simply proves that their original allegations were false, reckless, and malicious when they were made and that they were made without any regard for the truth or falsity of the accusations.

14.

The damage to Ms. Reitano is practically impossible to calculate. The accusations have completely disrupted Ms. Reitano's personal, professional and family life. They have caused her extreme physical, mental and emotional suffering. She now sees strangers in public places and

wonders if they are recognizing her and thinking that she is a criminal. Even with her friends, she constantly wonders if they even believe her when she says that the accusations are false. The accusations have completely dominated her life since they started and she is filled with self-doubt because nothing is being done by the defendants to repair or reverse the damage.

15.

The accusers, especially Mr. Freeh, are very powerful people. Mr. Freeh was once a federal judge and the Director of the FBI. What he says is accepted as truth or, at the very least, given the benefit of every doubt. Ms. Reitano, on the other hand, is a simple American, devoted mother of three, formerly with a legal career, but now unemployable in her chosen profession on account of the false accusations of the defendants and their persistent refusal to admit that they were wrong. She is no match for the defendants in a public influence contest. Mr. Freeh is fully aware of what false accusations can do to a person and their life. In 2011, when one of Freeh's defendant/clients was exonerated from false criminal charges, he was described as a person with "impressive credentials" and here is what was reported about his comments on the need to make a public announcement of the exoneration:

> It was important, Freeh said, to get it 'on the public record that the government closed the case. No criminal charges. That's not on the public record.'
>
> It was important no only [for] Minnesotans but also for 'the children and grandchildren' of Kazeminy and Coleman [to] understand that was how all of this ended.
>
> Someday, Freeh said, those children or grandchildren will google the names of Kazeminy and Coleman, and if this news event had not been held, there would have been no clear conclusion to the rash of allegations.
>
> It is the responsibility of the Minnesota media to give this story–this story of no criminal charges–as much play as the initial allegations received, he said.

'Sadly, though these allegations were entirely false,' Freeh said, 'they were repeated in hundreds of local and national media reports, which consumed the final days of Minnesota's closely contested U.S. Senate race.  As a result, the good names of Mr. Kazeminy and Sen. Coleman were gravely injured and tarnished.'

Freeh did say that Coleman, Kazeminy and their families understood how a news event like today's would bring back an old story.  Freeh also said that he understood that it's difficult to clear names once they have been tarnished.

He said there once was a secretary of Labor accused of many 'horrors,' but eventually was cleared of wrongdoing.

'He asked, 'Where do I go to get my good reputation back?'

It is a legitimate question.[2]

Mr. Freeh apparently does not believe that Ms. Reitano's children and grandchildren deserve the same treatment as Messrs. Kazeminy and Coleman, but the only difference between their circumstance and Ms. Reitano's is that Mr. Freeh is not Ms. Reitano's lawyer.  Mr. Freeh and the Freeh Group have most assuredly NOT made their findings of no criminal conduct for Ms. Reitano public, they also continue to refuse to retract or even alter their allegations which means the Ms. Reitano's ability to restore her reputation is indefinitely postponed until they make the public announcement that the accusations were false and insupportable.

16.

According to an interview of Mr. Freeh in March of 2014 by Fraud Magazine, he claims that he always follows "The same core principles: full and fair investigations and letting the facts determine how they end."  And, asked if his investigative approach (for the Freeh Group) changed much from his FBI and prosecution days, he responded: "It's not changed in terms of the core

---

[2] Minnesota Post, June 14, 2011, Doug Grow, reporter.

principles statement I had at the FBI and our commitment to fairness and integrity."[3]  In the present case, Mr. Freeh has abandoned an attorney's general legal duty of fairness and integrity in all matters, including Ms. Reitano's case, and he has apparently abandoned his own personal, self-professed and self-imposed "core principles and commitment to fairness and integrity."

## JURY TRIAL REQUESTED

17.

Ms. Reitano requests a jury trial on all matters triable by a jury and, specifically, that the amount of her damages be determined by a jury.

RESPECTFULLY SUBMITTED:

_____/s/ Mary Olive Pierson_____
Mary Olive Pierson, (La. Bar No. 11004)
8702 Jefferson Hwy. Ste. B (70809)
P.O. Box 14647
Baton Rouge, LA 70898
Phone: (225) 927-6765
Fax: (225) 927-6775
Email: mop@mopslaw.com

SERVICE INFORMATION:

A REQUEST FOR A WAIVER OF SERVICE WILL BE MADE IN ACCORDANCE WITH FRCP RULE 4(d).

---

[3] This article can be found on the Freeh Group website under "News and Events," "Louis Freeh: Tempered Ambition," March 1, 2014.  Fraud Magazine.